**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**AT PIKEVILLE**

**CIVIL ACTION NO. 05-49-DLB**

**HAROLD R. SAGRAVES**                                                                                    **PLAINTIFF**

vs.                                **MEMORANDUM OPINION & ORDER**

**JO ANNE B. BARNHART, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                                                **DEFENDANT**

******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, Harold R. Sagraves, filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on January 30, 2003. He alleges a disability onset date of June 30, 1990, due to back impairment, depression and pain. His claims were denied initially and on reconsideration. Plaintiff then requested a hearing before an administrative law judge (ALJ) which hearing was held on April 20, 2004, in Prestonburg, Kentucky. The ALJ ruled that he was not under a disability and was not eligible for DIB or SSI payments. The Appeals Council denied Plaintiff's request for review on February 2, 2005.

The instant action was filed on May 18, 2005. It has now culminated in cross motions for summary judgment.

## II.  DISCUSSION

### A.  Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, or combination thereof, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. 15). At Steps 2 and 3, the ALJ found that Plaintiff's chronic back/right knee and hip pain and chronic left shoulder/wrist pain constituted severe impairments. (Tr. 15-17). The ALJ concluded, however, that Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment found in Appendix 1, Subpart P of Regulations No. 4. (Tr. 17).

At Step 4, the ALJ found that Plaintiff had the following residual functional capacity (RFC): The claimant has chronic back/right hip pain and tenderness/pain in the right shoulder. He can lift/carry 20 pounds occasionally and 10 pounds frequently. He can stand/walk for six hours. He can sit for six hours. He requires an option to alternate sitting and standing for five minutes every hour to relieve discomfort. He should no more than frequently push/pull or use hand controls with the right upper extremity. He can only occasionally push/pull or use foot controls with the right lower extremity. He should only occasionally climb stairs/ramps and never climb ladders, ropes or scaffolds. He can only occasionally stoop, crouch or crawl and should no more than frequently kneel. He should avoid full body vibration or vibratory machinery. (Tr. 19-20). Because the Plaintiff's past work required him to perform up to the heavy level of exertion, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a produce delivery truck driver. (Tr. 20).

The ALJ therefore proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there are jobs existing in significant numbers in the national economy that he could perform, including machine tender and production inspector at the light

unskilled level, and surveillance monitor and machine tender at the sedentary unskilled level. This conclusion resulted from testimony by a vocational expert (VE), in response to hypothetical questions involving a person of Plaintiff's age, education, past relevant work experience, and RFC.

**C.    Analysis**

Plaintiff raises one challenge in his appeal. He argues the decision was not supported by substantial evidence because the ALJ did not comply with Social Security Ruling 96-6p. The relevant provision of SSR 96-6p provides:

> Administrative law judges and the Appeals Council are not bound by findings made by State agency or other programs physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.

Plaintiff contends the ALJ erred by placing an improper limitation in his hypothetical that Plaintiff should avoid "full body vibration and vibratory machinery." This was improper, according to Plaintiff, because state agency consultants Dr. John Rawlings and Dr. Calixto Hernandez completed Physical RFC forms indicating Plaintiff should avoid concentrated exposure to vibration *and* concentrated exposure to hazards, such as machinery, heights, etc. (Exhibits 4F, 11F). Their opinions were evidenced by the checking of two separate boxes on the Physical RFC form. One box was checked to reflect Plaintiff should avoid concentrated exposure to vibration and the other was checked to reflect Plaintiff should avoid concentrated exposure to hazards, such as machinery and heights.

These findings were used by the ALJ in determining Plaintiff's RFC, noted above. The ALJ posed the following hypothetical question to the VE at the hearing:

> The Claimant has chronic back pain and right hip pain. He has tenderness and pain in the left shoulder. However, he retains the residual functional

4

> capacity to lift/carry occasionally 20 pounds, frequently 10 pounds; stand or walk six hours, sit six hours. He would need to alternative sitting and standing for five minutes every hour to relieve discomfort. No more than frequent push or pull or use of hand controls with left upper extremity, only occasional push or pull or use of foot controls with right lower extremity; only occasional climbing of stairs or ramp, never a ladder or rope. Only occasional stopping, crouching or crawling. No more than frequent kneeling. He should avoid full-body vibration and vibratory machinery.

(Tr. 300-01).

The VE was then asked whether there were any unskilled jobs available to Claimant in the national or regional economy to which he responded affirmatively, giving the following examples: light manufacturing machine tender, light production inspector, sedentary surveillance monitor and sedentary machine tender. (Tr. 301). According to Plaintiff, the ALJ erroneously characterized the limitation as being exposed to vibratory machinery, rather than being exposed to the hazards of machinery generally. Plaintiff submits that the light machine tender and sedentary machine tender jobs would likely involve concentrated exposure to machinery generally, regardless of whether the machinery was vibratory. Because the ALJ's hypothetical elicited jobs that did not expose Claimant to vibratory machinery, rather than machinery generally, the Plaintiff submits that the resulting testimony by the vocational expert does not constitute substantial evidence upon which the ALJ's decision is based.

In response, the Commissioner notes the VE testified that the job of light manufacturing machine tender was "better than 95 percent simply watching an automated manufacturing machine." The Commissioner additionally argues that two of the jobs identified by the VE, light production inspector and sedentary surveillance monitor, do not

5

involve concentrated exposure to machinery.  Therefore, according to the Commissioner, the limitation, even if improper, was of no significance.

As an initial matter, it should be noted that Plaintiff offers no reference to the Dictionary of Occupational Titles nor does he cite any other support for the proposition that the jobs of light machine tender or sedentary machine tender would actually involve a concentrated exposure to machinery.  Rather, Plaintiff merely submits that to a "layperson it would reasonably appear" that those jobs would involve such exposure.  This evidence is insufficient to render the ALJ's hypothetical improper.

Moreover, while an ALJ must consider a state agency medical consultant's assessment of a claimant's RFC, the ALJ is not bound by those findings.  20 C.F.R. § 404.1527(f)(2)(I).  It is the ALJ who must assess and make a finding as to the claimant's residual functional capacity based on all of the relevant medical and other evidence in the case record.  20 C.F.R. § 404.1520(e).  *See also Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005) ("It is the ALJ's duty to determine an applicant's RFC"); *Clinker v. Apfel,* 229 F.3d 1151, 2000 WL 1234325, *1 (6th Cir.)(unpublished table decision)(rejecting argument that ALJ erred by "creating" his own RFC and noting the relevant question is "whether the ALJ's assessment was supported by substantial evidence").

In the present case, the ALJ determined that Plaintiff should avoid "full body vibration and vibratory machinery."  This was a reasonable and logical interpretation of the Physical RFC forms completed by Dr. Rawlings and Dr. Hernandez.  Moreover, there is nothing in Dr. Stephen Nutter's Internal Medicine Consultative Examination, of which Dr. Rawlings gave "great weight," that would indicate that Plaintiff should avoid concentrated exposure to *all* machinery.

Furthermore, to the extent that the ALJ's interpretation of the Physical RFC forms may not have been reasonable, this error was harmless. Plaintiff does not appear to argue that the light production inspector or the sedentary surveillance monitor would involve concentrated exposure to machinery. Significantly, in responding to the hypothetical posed by the ALJ, the VE specified the number of positions available for each job.

According to the VE, there are 11,000 light production inspector jobs as well as 2,800 sedentary surveillance monitor jobs regionally. This total of 13,800 represents a significant number of jobs which Plaintiff can perform. *See Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (The ALJ's finding that 1,350 jobs in the local economy "established the existence of work in significant numbers" was supported by substantial evidence); *Kappesser v. Commissioner of Social Security*, 69 F.3d 537, 1995 WL 631430, *4 (6th Cir.)(unpublished table decision)(An ALJ's finding that 442 jobs locally, 1,149 jobs statewide and 101,212 jobs nationally constituted a significant number of jobs was supported by substantial evidence); and *Stewart v. Sullivan*, 904 F.2d 708, 1990 WL 75248, at *4 (6th Cir.)(unpublished table decision)(holding that "125 relevant jobs can be a significant number of jobs" in a region).

A similar issue was involved in *Johnson v. Barnhart*, 2004 WL 1529296 (D. Me.), *report & recommendation adopted,* 2004 WL 1572705 (D. Me.). There, the ALJ omitted from his hypothetical question that the plaintiff needed to avoid exposure to "moving machinery." *Id.* at *4. The Commissioner argued that this error was harmless because two of the jobs did "not entail exposure to moving machinery." *Id.* However, the VE testified that the three jobs "collectively accounted" for the job positions regionally, state wide and

7

nationally.  *Id.*  Therefore, because the Commissioner could not show "how many positions correlate[d]" to each of the jobs, the error was not harmless.  *Id.*

In contrast to *Johnson*, the VE in the present case specifically identified the number of positions available for each job.  Thus, even if the light machine tender and sedentary machine tender are excluded, the remaining total of 13,800 represents a significant number of jobs that Plaintiff can perform.  The ALJ's error was therefore harmless.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #10) is hereby **GRANTED**.

A judgment affirming this matter will be entered contemporaneously herewith.

Dated this 27th day of September, 2005.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-05-49-SargravesMOO.wpd